# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**DAVID E. HEINLE,**<br><br>      Debtor. | Case No. **21-20164-BPH** |
| **LYNN STUTZMAN,**<br><br>Plaintiff.<br><br>v.<br><br>**DAVID E. HEINLE,**<br><br>Defendant. | Adv. No. **22-ap-02003-BPH** |

## MEMORANDUM OF DECISION

Plaintiff Lynn Stutzman filed a complaint commencing this adversary proceeding on February 28, 2022. Plaintiff seeks to deny Defendant David Heinle's entire Chapter 7 discharge, alleging Defendant made fraudulent statements under oath. Plaintiff seeks relief pursuant to § 727(a)(4).[1]

The Court conducted a trial on September 14, 2022. Appearances were noted on the record. Defendant provided the sole witness testimony. Exhibits 1-10, 15-18, 20-22, 24-26, 28-30, 32, 34-38, 42, 43, and 46 were introduced and admitted without objection. Based on the record developed before this Court, the following constitute findings of fact and conclusions of law to the extent required by Rules 7052 and 9014.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

1

## JURISDICTION[2]

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b). This is a core proceeding to determine a creditor's objection to discharge under 28 U.S.C. § 157(b)(2)(J).

## BACKGROUND

The dispute in this adversary proceeding arises from Defendant's bankruptcy Schedules[3] and Statement of Financial Affairs,[4] Defendant's § 341 meeting conducted on January 21, 2022,[5] and Defendant's 2004 Examination conducted on February 11, 2022.[6] The parties agree that in each of these circumstances, Defendant either signed documents or provided testimony under the penalty of perjury. The parties further agree Defendant did not account for a 2016 snowmobile and a weanling on his Schedules. Neither the Trustee nor any other creditors joined in the action.

Prior to Defendant's bankruptcy, Plaintiff and Defendant lived together and jointly operated a limited liability company known as "Broken Fiddle Ranch." Through Broken Fiddle Ranch, the parties bought, sold, and provided the services of horses, donkeys and mules, as well as provided care, training and pasturing of the same for third parties. Plaintiff and Defendant ultimately ended both their romantic relationship and business partnership and dissolved Broken Fiddle Ranch LLC in 2019.

Additionally, Defendant jointly purchased a snowmobile – a 2016 Bombardier Ski-doo ("Snowmobile") – with his friend, John Cunningham, a Florida resident. Notably, Defendant's name is the only one on the certificate of title.[7] Defendant and Cunningham purchased the Snowmobile approximately two years prior to the filing of Defendant's petition. Defendant retains possession of the Snowmobile, and both share in its use.

On May 11, 2021, Plaintiff obtained a default judgment against Defendant in the amount of $180,000.[8] Defendant's efforts to set it aside were futile, and Defendant filed his bankruptcy petition on November 19, 2021.[9] In Defendant's bankruptcy, Plaintiff filed a proof of claim in

---

[2] The parties each consented to this Court exercising jurisdiction over this adversary proceeding at ECF No. 16.
[3] ECF No. 12-1.
[4] ECF No. 12-2.
[5] ECF No. 15-1.
[6] ECF No. 12-43.
[7] ECF No. 12-41. Defendant further testified that Cunningham lost the title.
[8] *Stutzman v. B and H Investment Properties, LLC, et. al.*, Mont. 22nd Judicial District Court, Cause No. DV-19-12.
[9] Case No. 21-20164-BPH.

the amount of $185,917.80.[10] Defendant initially filed under Chapter 13 but converted his case to Chapter 7 shortly after filing.

## SUMMARY OF ARGUMENTS

I. **Plaintiff's Allegations.**

Plaintiff claims that Defendant provided false oaths and accounts in his Petition, Schedules, Statement of Financial Affairs, § 341 meeting, and 2004 examination. Further, these fraudulent oaths were knowingly made, related to a material fact, and done with the intention of deceiving Defendant's creditors.

Plaintiff alleges that Defendant's Schedules A/B failed to disclose the Snowmobile and a weanling pony ("Weanling") that Defendant later sold post-petition. Plaintiff further alleges that Defendant's Petition failed to disclose Defendant's continued operation and involvement with Broken Fiddle Ranch, now operating as a sole proprietorship. Similarly, Plaintiff argues that Defendant's Statement of Financial Affairs failed to disclose the sale of numerous horses and mules occurring during the 2-years prior to the entry of the order for relief in this bankruptcy case, or any income from Broken Fiddle Ranch. Plaintiff further alleges that Defendant's Schedule I neither disclosed income generated by any sales of livestock, nor any income from breeding and pasturing services provided by Defendant. Additionally, Defendant's Schedule J, according to Plaintiff, failed to disclose Defendant's actual disposable income. Plaintiff emphasized in her post trial brief that Defendant testified at trial to the sale of nine horses and mules in 2021 generating $12,900 in sales proceeds, which are undisclosed on his statement of financial affairs or reflected on his Schedule I.

In essence, Plaintiff argues that Defendant concealed the ongoing operation and, consequently the profits, of Broken Fiddle Ranch from creditors and the Trustee. He further concealed, through non-disclosure, the Weanling and the Snowmobile.[11] In doing so, Defendant has interfered with the administration of his bankruptcy case and caused Plaintiff to undertake an investigation into Defendant's business affairs and disposition of Defendant's property.

---

[10] *See* Claim 4-1, Bankruptcy Case. The claim accounts for the $180,000.00 judgment and accrued interest and accounts for a little over 94% of the total amount claimed by creditors against Defendant.

[11] Plaintiff's Complaint also alleges that Defendant failed to disclose a snowmobile trailer, a pack saddle and a riding saddle. *See* ECF No. 1 at ¶ 13(b). Plaintiff's pre-trial memorandum omits mention of these items but includes a coffee cart and alleges Defendant "failed to disclose property in the Defendant's possession owned by another person." *See* ECF No. 21, p. 2-3. This property was later revealed as a "Vis-À-Vis" sleigh at trial. Plaintiff, in her post-trial memorandum, has seemingly narrowed the outstanding disputed issues to the omitted Snowmobile and Weanling, and Defendant's failure to disclose the continued operation of Broken Fiddle Ranch. *See* ECF No. 29, p. 2-3.

3

## II. Defendant's Response.

Defendant denies that the omissions in the schedules support a denial of discharge. Defendant further denies that he had an intent to deceive creditors or the trustee in any omission. Finally, Defendant contends there is no showing that any omission has had a detrimental effect on the administration of this case.

Defendant's response to the omission of the Snowmobile from the schedules is two-fold. First, Defendant notes that a title of certificate only raises the presumption of ownership but does not negate joint ownership. Instead, Defendant argues, he and Cunningham each hold one-half interest in the ownership of the Snowmobile. Second, Defendant states that he testified at the 2004 Examination that the omission was an oversight on his part. Similarly, in response to Plaintiff's allegations surrounding the omission of the Weanling, Defendant states that he disclosed the mare and that the pair were a single unit that would have been sold together if they were sold. Even if it had been disclosed, it would have been claimed as exempt pursuant to Mont. Code Ann. § 25-13-609(1) (2021).

In response to the omission of Defendant's operation of Broken Fiddle Ranch as a sole proprietorship, he argues that the omission had no impact on the estate, particularly because the trustee did not join the objection or testify in any way. The sales had no impact on the administration of the estate because there is no showing that any sale was for less than adequate consideration such that the trustee could have asserted a claim under § 548 or Montana's Fraudulent Transfer Act.[12]

Further, Defendant mistakenly considered the dissolution of Broken Fiddle Ranch LLC as the conclusion of it as a business, despite his ongoing involvement with donkeys, horses and mules. When he lived with Plaintiff, he spent a significant portion of his time operating the business. After Broken Fiddle Ranch as a limited liability company was dissolved, Defendant found full-time employment at Stillwater Mining Company. Defendant's full-time employment reduced the time he could commit to the donkeys, horses and mules. At trial, Defendant testified that he provided for monthly income of $500.00 from all other sources on Schedule I.

## ANALYSIS

"Bankruptcy's fresh start comes at the cost of actually filing a bankruptcy petition, turning one's assets over to the court and repaying debts that can be paid." *Majewski v. St. Rose Dominican Hosp. (In re Majewski)*, 310 F.3d 653, 656 (9th Cir. 2002). Inherent in this proposition is the debtor's duty to prepare the petition, statements, and schedules carefully, completely, and accurately. *Cusano v. Klein,* 264 F.3d 936, 945-46 (9th Cir. 2001). Should a debtor knowingly make a fraudulent statement or omission in these items, the debtor's discharge may be denied under § 727(a)(4)(A). *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (B.A.P. 9th Cir. 2007). Similarly, testimony given under oath in connection with the bankruptcy proceedings, such as a § 341 meeting, also "qualifies as occurring under oath for

---

[12] Mont. Code Ann. §§ 31-2-301, et seq. (2021).

4

purposes of § 727(a)(4)(A)." *Schindler v. Milliron (In re Milliron)*, 629 B.R. 893, 912-13 (Bankr. D. Alaska 2021).

Section 727(a)(4)(A) states that the court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. A claim for denial of discharge under § 727(a) is construed liberally in favor of the discharge and strictly against a person objecting to the discharge. *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir. 1986). To prevail on a § 727(a)(4) action, a plaintiff must show, by a preponderance of the evidence, four elements: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *Retz v. Samson* (*In re Retz*), 606 F.3d 1189, 1197 (9th Cir. 2010).

### I. Defendant made a false oath in connection with his bankruptcy because he admitted to omissions on his petition and schedules.

Under the first element, the plaintiff must show that the debtor made a false oath in connection with the case. *Id.* A false oath may involve a false statement or omission in the debtor's schedules. *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005).

The first element is easily met. Defendant admits he inadvertently omitted the Snowmobile from the schedules. He further admits that he did not include the Weanling as he viewed it, and its mother,[13] as a part of a single unit. He testified that he did not disclose his continuing enterprise with donkeys, horses and mules because Broken Fiddle Ranch was dissolved. At trial, Defendant testified he believed that the petition and schedules were accurate at the time but admits now that they were not. Accordingly, Plaintiff proved by a preponderance of the evidence that Defendant made a false oath in connection with his bankruptcy when he signed his petition and schedules under penalty of perjury certifying they were true and accurate.

### II. Defendant's omissions were material because they related to his business transactions and concerned the discovery of assets, business dealings, or the existence and disposition of his property.

Under the second element, the relevant false oath must relate to a material fact. *In re Retz*, 606 F.3d at 1198. Materiality is "broadly defined."[14] *Fogal Legwear of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 63 (B.A.P. 9th Cir. 1999); see also *In re Khalil*, 379 B.R. at 173 (citing *Garcia v. Coombs (In re Coombs),* 193 B.R. 557, 560 (Bankr. S.D. Cal. 1996)). A broad

---

[13] The mare was disclosed on Defendant's amended Schedules A/B. ECF No. 12-3.
[14] Trial courts have differed as to how to just how broadly materiality should be defined. *Compare Hopper v. Lewis,* 551 B.R. 41, 54 (Bankr. E.D. Cal. 2016) ("Only an omission or misstatement that 'detrimentally affects administration of the estate' is material"), *with United States v. Lee (In re Lee)*, 2015 Bankr. LEXIS 1635, *6 (Bankr. D. Haw. 2015) ("Stated another way, a false statement or omission is material unless it 'has no impact on a bankruptcy case.'"). The gulf between "detrimentally affecting the administration of the estate" and "impacting a bankruptcy case" is large.

5

definition is appropriate because "the fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." *In re Wills*, 243 B.R. at 63.

A fact is "material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *In re Retz*, 606 F.3d at 1198 (citing *In re Khalil*, 379 B.R. at 173). An omission or misstatement that "detrimentally affects administration of the estate" is material. *In re Wills*, 243 B.R. at 63. Further, "[e]ven if the debtor can show that the assets were of little value or that a full and truthful answer would not have directly increased the estate assets, a discharge may be denied if the omission adversely affects the trustee's or creditors' ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition." *Id.* If debtors were allowed the discretion to not report exempt or worthless property, they would "usurp[ ] the role of the trustee, creditors, and the court by denying them the opportunity to review the factual and legal basis of debtors' claims. It also permits dishonest debtors to shield questionable claims concerning an asset's value and status as an exemption from scrutiny." *In re Coombs*, 193 B.R. at 566 (internal citations omitted). However, a false statement or omission that does not impact a bankruptcy case is not material and thus not grounds for discharge under § 727(a)(4)(A). *In re Khalil*, 379 B.R. at 172.

Plaintiff and Defendant urge the Court to adopt differing approaches to materiality. Plaintiff's approach asks this Court to embrace a broad definition of materiality, arguing "[s]ince the *Retz* decision, courts in the Ninth Circuit have not required an explicit interference with the administration of the bankruptcy estate as a required element of materiality."[15] Defendant counters that Plaintiff is urging the adoption of a "minimalist standard . . . not supported by the cases."[16] This Court disagrees with Defendant's narrow view of materiality. Construing materiality broadly is necessary to protect § 727(a)(4)(A)'s fundamental purpose of insuring that the trustee and creditors have accurate information without having to conduct costly investigations. *See, e.g., Taylor v. Good (In re Taylor)*, 720 Fed. Appx. 413, 414 (9th Cir. 2018).

Accordingly, Plaintiff has met her burden under the second element of the § 727(a)(4)(A) analysis. Defendant's oath related to a material fact. Defendant continued to operate Broken Fiddle Ranch as a sole proprietorship after it was dissolved as a limited liability company. Regardless of whether Defendant mistakenly believed he did not need to do so, the business, and its profits, were not disclosed to Plaintiff, the trustee, or other creditors. The omission of Broken Fiddle Ranch activities necessarily bore "a relationship to the debtor's business transactions or estate..."

Defendant does not dispute that the Snowmobile was omitted, but rather that its omission was simply an oversight. Similarly, Defendant argues the Weanling's omission from the

---

[15] ECF No. 28, p. 5.
[16] ECF No. 29, p. 3.

schedules stems from a common practice in the horse breeding profession.[17] Defendant states that the Weanling would have been claimed as exempt pursuant to Mont. Code Ann. § 25-13-609(1). While persuasive as to the lack of impact on the estate, a debtor cannot pick and choose which assets he reports based on whether the asset is exempt or worthless. As a result, the omission of the Snowmobile and the Weanling directly concern the discovery of assets held by Defendant.

Consequently, Plaintiff proved by a preponderance of evidence that Defendant's failure to report the Broken Fiddle Ranch activity, Snowmobile and Weanling were material because they related to his business transactions and concerned the discovery of assets, business dealings, or the existence and disposition of his property.

### III. Defendant acted carelessly, not knowingly, in making the false oath.

Under the third element, a debtor acts knowingly if he or she acts deliberately and consciously. *In re Retz*, 606 F.3d at 1198 (citing *In re Roberts*, 331 B.R. at 883). The statute specifically requires that the debtor make the false oath "knowingly." *In re Khalil,* 379 B.R. at 174. Consequently, carelessness and recklessness are a lower standard than "knowing" and do not meet the statutory requirement. *In re Roberts*, 331 B.R. 876 at 884. Indeed, the three standards are distinct:

> A person acts knowingly if he or she acts deliberately and consciously . . . 'Careless and reckless' is a lower standard than "knowing." An action is careless if it is "engaged in without reasonable care." This is a negligence standard, not a knowing misconduct standard. A false statement resulting from ignorance or carelessness does not rise to the level of "knowing and fraudulent." Similarly, recklessness does not measure up to the statutory requirement of "knowing" misconduct. An action is reckless if it creates, "a substantial and unjustifiable risk of harm to others [through] a conscious (and sometimes deliberate) disregard for or indifference to that risk."

*Id.* at 883-84 (internal citations omitted).

Further, recklessness is probative of fraudulent intent. *In re Khalil*, 379 B.R. at 173. A court may find that

> multiple omissions of material assets or information may well support an inference of fraud if the nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal.

---

[17] Although not entirely clear, Defendant's testimony indicated the Weanling was considered inseparable from its mother, which was disclosed. For example, when cattlemen refer to a "pair," it is ordinarily a cow and calf and considered one unit. Defendant's testimony suggested he considered the mother and foal one unit, and the mother was disclosed.

*Id.* at 174-75 (citing *In re Coombs,* 193 B.R. at 566). However, acting recklessly alone does not satisfy the "knowingly" requirement. *Id.* at 173-74. ("[R]ecklessness does not measure up to the statutory requirement of 'knowing' misconduct…These cases could be read as equating recklessness with a knowing and fraudulent intent, but that goes too far.").

Under the third element, the Court cannot conclude that Defendant acted knowingly when he made the false oath. At trial, Defendant provided credible testimony to the Court about the omissions in his schedules, testifying that he believed they were true and accurate at the time he signed them but had since learned they were not. At best, Defendant acted recklessly, although the Court believes Defendant's behavior more likely evinces a carelessness by Defendant as to full disclosure. Regardless of whether Defendant acted carelessly or recklessly, neither equate to "knowingly," the standard required by § 727(a)(4).

First, at the 2004 examination, Defendant testified that he had a half ownership interest in the Snowmobile. He further testified Plaintiff was aware of the Snowmobile. Defendant provided testimony at trial that the omission was an oversight on his part. It does not appear Defendant ever attempted to obfuscate the issue. As Defendant notes in his post-trial brief, he "testified that he understood that he had certain nonexempt assets that the trustee would have a right to sell and that he was interested in buying them from the estate."[18] In fact, Defendant and Trustee discussed potential sales of estate assets to Defendant at the § 341 meeting. The Court cannot reconcile Plaintiff's allegation that Defendant attempted to conceal the Snowmobile with Defendant's willingness to bargain with the Trustee on the other assets, particularly given that Plaintiff was aware of the Snowmobile. As a result, the Court finds that Defendant provided credible testimony as to the shared ownership of the Snowmobile with Mr. Cunningham, and further, that the omission of the Snowmobile resulted from an oversight on Defendant's part, rather than an attempt to conceal the Snowmobile.

Secondly, Defendant testified that the omission of the Weanling resulted from his view of the animal as part of a single unit with its birth mother. As Defendant states in his post-trial brief, "it was born shortly before the filing of the case, and they had to stay together until the foal was weaned, which did not happen until several months after filing. Before then they were a single unit and the mare and Weanling would have been sold together if they were sold."[19] Defendant testified to the same at his 2004 examination, stating, "[s]he's the old pony's foal. The $300 one [disclosed on the schedules]? And normally in the horse world you don't disclose the foals or you don't -- it's just like paying rent. You pay rent for the old animal, not the foal."[20] Again, the Court finds Defendant's statements as to the mistaken omission of the Weanling credible.

Finally, Plaintiff argues that "the Defendant freely admits that he did not disclose his Broken Fiddle Ranch business or the $12,700 in horse and mule sales income he realized in the

---

[18] ECF No. 29, p. 6.
[19] ECF No. 29, p. 5.
[20] ECF No. 12-43, p. 48.

10 months before he filed bankruptcy."[21] Specifically, Plaintiff argues that income attributable to Defendant's prepetition activities involving donkeys, mules and horses was not disclosed. Plaintiff's point is well taken, and the omission gives the Court pause. Defendant testified that, after the LLC was dissolved, it operated in a much-diminished capacity, particularly given that he was working full-time at Stillwater. Defendant also stated that Broken Fiddle Ranch is "just a name that I dream about" at this stage.[22] Although this does not clearly explain the omission of prepetition income, all animals and equipment involved in Broken Fiddle Ranch have been reported on Defendant's schedules, except the aforementioned Weanling.

Defendant's trial testimony regarding the omission of the prepetition livestock sales was at best, unclear. At trial, Defendant testified that he provided for $500.00 of monthly income from other sources on his Schedule I and that this disclosure "could be" from pre-petition Broken Fiddle Ranch animal sales. This explanation draws no distinction between pre-petition income and Schedule I's instructions which state, "Estimate monthly income as of the date you file this form." Although not directly stated as such, the Court finds it plausible that this disclosure is meant to embrace income attributable to the prepetition sales income.

While troubled by Defendant's omission of prepetition livestock sales, the Court finds Defendant's testimony and disclosure partially mitigates its concerns in light of the additional disclosures of animals, and equipment, save the Weanling. Although the monthly $500.00 of additional income does not fully address the omitted prepetition sale income, Defendant's testimony has convinced the Court that he was careless in his disclosures.[23]

Altogether, Plaintiff argues that because Defendant failed to list a jointly owned 2016 snowmobile, a Weanling, and certain prepetition income, Defendant is not entitled to a discharge. Defendant's explanation regarding the omission of these assets is plausible. Defendant was candid in his reasons as to why he mistakenly believed the assets did not need to be disclosed, or, in the case of the Snowmobile, merely overlooked. Defendant's actions show statements made from ignorance or negligence, but they do not reflect deliberate and conscious omissions. At best (and the Court is not convinced that this is the case), they reflect a reckless approach to the signing of the schedules and petitions. Accordingly, the Court finds that Plaintiff failed to prove by a preponderance of the evidence that Defendant's conduct rose to the level of knowingly as required by the third element of § 727(a)(4).

---

[21] ECF No. 28, p. 6. While Plaintiff states a total of $12,700 in sales income here, it is at odds with the previously provided sum of $12,900 in the Statement of the Facts earlier in Plaintiff's post-trial memorandum. The Court chooses to utilize the latter total in its analysis.

[22] ECF No. 12-43, p. 38.

[23] As the Court further explains below, the Trustee's testimony would have been particularly helpful in determining whether Defendant acted knowingly and fraudulently. Without testimony by the Trustee or other witnesses, the Court is left to solely rely upon Defendant's representations. As it has noted, the Court found Defendant's testimony candid and credible throughout the trial.

Plaintiff's failure to prove that Defendant's conduct rises to the standard of "knowingly" is dispositive. However, to provide a thorough analysis, the Court will briefly review the fourth element of § 727(a)(4) as if it found that Defendant had acted knowingly.

### IV. Even if Plaintiff established Defendant acted knowingly, Defendant did not act with fraudulent intent when he made the false oath.

Finally, under the fourth element, the oath must be made fraudulently. *In re Retz*, 606 F.3d at 1197. To demonstrate fraudulent intent, the plaintiff bears the burden of showing that: "(1) [the defendant] made the representations [e.g., a false statement or omission in bankruptcy schedules]; (2) . . . at the time he knew they were false; [and] (3) . . . he made them with the intention and purpose of deceiving the creditors." *Id.* at 1198-99 (citing *In re Roberts*, 331 B.R. at 884). Intent is typically demonstrated by circumstantial evidence or by inferences drawn from the debtor's conduct. *Id.*; *see also In re Devers,* 759 F.2d 751, 754 (9th Cir. 1985) ("Because a debtor is unlikely to testify directly that his intent was fraudulent, the courts may deduce fraudulent intent from all the facts and circumstances of a case.") As stated above, reckless indifference or disregard for the truth may be circumstantial evidence of intent. *Id.* Such evidence alone is not sufficient to constitute fraudulent intent, however. *Id.*

Further, as the *Coombs* court stated,

> Neither sloppiness nor an absence of effort by the debtor supports, by itself, an inference of fraud . . . Had the Congress intended to make such a rule, it could have done so easily, as it did with § 727(a)(3) (failure to keep adequate books and records), and (a)(5) (failure to adequately explain the loss of assets), neither of which have an express element of fraudulent intent . . . This Court holds the opinion that there is little that will prove to be immaterial for purposes of required disclosure if it aids in understanding the debtor's financial affairs and transactions. However, the "size and status of the omitted assets" is directly relevant to determining the debtor's intent and whether it was fraudulent. The distinction between the prophylactic and inclusive concept of materiality in disclosure should not blur the separate requirement of an actual intent to defraud.

193 B.R. at 565-67.

Plaintiff has not met her burden under the fourth element of § 727(a)(4). It is undisputed that Defendant attested to the true and accurate nature of his petition and schedules despite the omissions of the Snowmobile, Weanling, and operation of Broken Fiddle Ranch. However, even if the Court found that Defendant knew at the time the statements were false, it remains unconvinced that Defendant acted with fraudulent intent.[24] The Court notes that the Chapter 7 Trustee's testimony would have been particularly instructive here. The Trustee is best positioned

---

[24] Other courts have found that far greater omissions in a debtor's schedules than the case at hand do not necessarily equate to a fraudulent intent by the debtor. *See, e.g., Trainor v. Evans (In re Evans)*, 2017 Bankr. LEXIS 2232, at *14-15 (B.A.P. 9th Cir. 2017).

to inform the Court on a debtor's potentially fraudulent activity, given the Trustee's role "to gather and liquidate the property of the estate, to be accountable for the estate, ensure that the debtor performs his or her obligations, investigate the finances of the debtor, review the proofs of claim, and where appropriate, oppose the debtor's discharge, [and] be available to provide relevant information to parties-in-interest . . ." *Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 950 (9th Cir. 2002). Accordingly, as it has done in the past, the Court deems it significant that the Trustee failed to join or provide testimony as to the denial of Defendant's discharge pursuant to § 727(a). *Olympic Coast Investment, Inc. v. Wright (In re Wright)*, 364 B.R. 51, 69 (Bankr. D. Mont. 2007).

This is not to say that Plaintiff could not prevail without the Trustee's testimony. However, the facts and circumstances do not suggest that Defendant acted with fraudulent intent. As discussed above, Defendant provided a credible explanation for the omission of Broken Fiddle Ranch, the Snowmobile, and the Weanling from his petition and schedules. Even if the Court were to characterize these omissions as reckless, recklessness, while probative of fraudulent intent, is not sufficient evidence alone to indicate fraudulent intent. The Court would need some other indicia of fraud. While Plaintiff characterizes Defendant's conduct at the 2004 examination as obfuscations and deflections,[25] Defendant's trial testimony was candid, believable and forthright.

As a result, the Court finds that Plaintiff failed to prove by a preponderance of the evidence that Defendant acted with fraudulent intent when he made the false oath.

## CONCLUSION

The Court is sensitive to the inherent tension between liberally construing a § 727(a) claim in favor of the discharge and strictly against a person objecting to the discharge and § 727(a)(4)'s fundamental purpose of insuring that the trustee and creditors have accurate information without having to conduct costly investigations. The bankruptcy process depends upon the true and accurate petition and schedules compiled by a debtor. In this case, Defendant's petition and schedules had material omissions, and Plaintiff subsequently spent time and money revealing these omissions. However, "the distinction between the prophylactic and inclusive concept of materiality in disclosure should not blur the separate requirement of an actual intent to defraud." Plaintiff failed to prove beyond a preponderance of the evidence that Defendant knowingly and fraudulently made a false oath or account. Accordingly, Defendant's Chapter 7 case is discharged. An Order will be entered separately.

Dated November 9, 2022.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana

---

[25] ECF No. 21, p. 5.